**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 12-cv-0993-WJM-BNB

MEMORYTEN, INC., a California corporation

      Plaintiff,

v.

LV ADMINISTRATIVE SERVICES, INC., a Delaware corporation,
LAURUS MASTER FUND, LTD., a Cayman Islands corporation,
LAURUS CAPITAL MANAGEMENT, LLC, a Delaware limited liability company,
VALENS CAPITAL MANAGEMENT, LLC, a New York limited liability company,
VALENS INVESTMENT ADVISORS, L.P., a Delaware limited liability partnership,
SILICON MOUNTAIN HOLDINGS, INC., a Colorado corporation,
SILICON MOUNTAIN MEMORY, a Missouri limited liability company, and
WAYTECH, LLC, a Missouri limited liability company,

      Defendant.

---

VALENS U.S. SPV I, LLC, a Delaware limited liability company,
VALENS OFFSHORE SPV I, LTD., a Cayman Islands corporation,
PSOURCE STRUCTURED DEBT LIMITED, a Guernsey company,
VALENS INVESTMENT ADVISORS, L.P., a Delaware limited liability partnership,
LAURUS MASTER FUND, LTD., a Cayman Islands corporation,
LV ADMINISTRATIVE SERVICES, INC., a Delaware corporation,
LAURUS CAPITAL MANAGEMENT, LLC, a Delaware limited liability company, and
VALENS CAPITAL MANAGEMENT, LLC, a New York limited liability company,

      Counterclaimants,

v.

MEMORYTEN, INC., a California corporation, and
KENNETH OLSEN,

      Counter-Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

---

Plaintiff MemoryTen, Inc. ("Plaintiff") has brought this action against Defendants LV Administrative Services, Inc., Laurus Master Fund, Ltd., Laurus Capital Management, LLC, Valens Capital Management, LLC, Valens Investment Advisers, L.P., (collectively the "LV Defendants"), Silicon Mountain Holdings, Inc. ("Silicon"), Silicon Mountain Memory, and WayTech, LLC, alleging breach of contract and related claims.  (Second Am. Compl. ("SAC") (ECF No. 125).)  Before the Court is the LV Defendants' Renewed Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2) ("Motion").  (ECF No. 129.)  For the reasons set forth below, the Motion is granted.

## I.  BACKGROUND

Plaintiff's claims arise out of the alleged breach of a Subscription Agreement contract dated August 12, 2008 ("Subscription Agreement").  (SAC ¶ 1.)  Plaintiff, Defendant Silicon, and Defendant LV Administrative Services were signatories to the Subscription Agreement, which included an agreement for Plaintiff to invest in Silicon in exchange for Silicon stock warrants and the first right to negotiate to acquire Silicon's Memory Component Distribution Business.  (SAC ¶¶ 24-26; Subscription Agreement (ECF No. 1 Ex. A; ECF No. 18-2) ¶¶ 3, 8.)  Defendant LV Administrative Services' role in the Subscription Agreement was "as agent for [Silicon]'s senior secured creditors,[1] the Laurus/Valens Funds."  (Subscription Agreement ¶ 8.1.)  The Subscription Agreement made Plaintiff's first right to negotiate to acquire Silicon's Memory Component Distribution Business "subject to the rights of" the Laurus/Valens Funds as

---

[1] In 2006, prior to the execution of the Subscription Agreement, the LV Defendants (or some of them) provided a multi-million dollar loan to Silicon, making them Silicon's senior secured creditors.  (SAC ¶ 11.)

Silicon's senior secured creditors, and provided that they would not "unreasonably withhold consent or approval" for the subject transactions between Silicon and Plaintiff.[2] (*Id.* ¶¶ 8.1-8.4.)  The Subscription Agreement also contained a provision indicating that it would be governed by and construed in accordance with Colorado law.  (*Id.* ¶ 10.)

In 2011, Silicon's assets were transferred to the LV Defendants, who then sold Silicon's assets to Defendant WayTech, allegedly without granting Plaintiff its right to negotiate to purchase the Memory Component Distribution Business.  (SAC ¶¶ 45-49.) Plaintiff then filed its initial Complaint against Silicon and the LV Defendants on April 13, 2012, alleging breach of the Subscription Agreement and related claims.  (ECF No. 1.)

On June 1, 2012, the LV Defendants filed their initial Motion to Dismiss for Lack of Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2).  (ECF No. 18.)  Plaintiff's brief in Response and supporting affidavits were filed on July 2, 2012.  (ECF Nos. 29, 30, 31, 34.)  The LV Defendants filed their Reply on July 20, 2012.  (ECF No. 36.)  With leave of Court, Plaintiff filed a Supplemental Response to the Motion on November 28, 2012 (ECF No. 85), and the LV Defendants filed a Supplemental Reply on December 14, 2012.  (ECF No. 91.)

---

[2] Who or what constitutes the "Laurus/Valens Funds" is not defined in the Subscription Agreement, but Plaintiff alleges that they include all of the LV Defendants, and that the LV Defendants generally acted as one entity.  (SAC ¶ 9.)  These factual allegations are at the root of Plaintiff's alter ego and agency theories, which argue that the forum-related acts permitting the exercise of jurisdiction over one of the LV Defendants can be imputed to all of them.  (ECF No. 34 at 13-15.)  Because the Court finds that it has no personal jurisdiction over any of the LV Defendants even if they are considered jointly, the Court need not consider the merits of the alter ego and agency theories.  Thus, for the purposes of the instant Motion, the Court will accept Plaintiff's allegations as true and will refer to the LV Defendants as if they operated collectively.

The LV Defendants and three affiliated parties (collectively "Counterclaimants") also filed Counterclaims on September 17, 2012, in their Answer to Plaintiff's Complaint, alleging Counterclaims against Plaintiff and one additional party (collectively "Counter-Defendants").  (ECF No. 45.)  Counter-Defendants filed a Motion to Dismiss the Counterclaims Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) on October 8, 2012.  (ECF No. 57.)  After a Response, a Reply, and a Supplemental Response to the Counter-Defendants' Motion to Dismiss were filed (ECF Nos. 72, 77, 87), Counterclaimants filed their First Amended Counterclaims on March 15, 2013.  (ECF No. 135.)  Counter-Defendants then filed a Renewed Motion to Dismiss on April 15, 2013, recognizing that Counter-Defendants' Motion to Dismiss was moot due to the filing of the First Amended Counterclaims.  (ECF No. 143.)  Accordingly, the Court dismissed as moot Counter-Defendants' original Motion to Dismiss, and ordered a Response and a Reply to be filed to Counter-Defendants' Renewed Motion to Dismiss.  (ECF No. 144.)

Similarly, Plaintiff filed its First Amended Complaint (ECF No. 98) on December 20, 2012, and on January 17, 2013, the LV Defendants filed a Renewed Motion to Dismiss for Lack of Jurisdiction (ECF No. 106), recognizing that their initial Motion (ECF No. 18) was also moot.  Accordingly, the Court denied the initial Motion as moot, but because the First Amended Complaint did not affect the merits of the Motion, the Court ordered that the parties' briefs filed with respect to the original Motion would be considered in evaluating the renewed Motion.  (ECF No. 110.)

On March 5, 2013, Plaintiff filed its SAC.  (ECF No. 125.)  As a result, the LV Defendants again renewed their Motion.  (ECF No. 129.)  Consequently, the Court

denied the LV Defendants' prior Renewed Motion as moot, and once again ordered that the parties' filings with respect to the original Motion would be considered in evaluating the LV Defendants' second Renewed Motion.  (ECF No. 144.)  The Motion is therefore fully briefed and ripe for resolution.  (ECF Nos. 18, 34, 36, 85, 91, 129.)

## II.  LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(2) is to test whether the Court has personal jurisdiction over the named parties.  The plaintiff bears the burden of establishing personal jurisdiction over a defendant.  *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir. 1984).  When the district court does not hold an evidentiary hearing before ruling on jurisdiction, "the plaintiff need only make a *prima facie* showing" of personal jurisdiction to defeat a motion to dismiss.  *Id*. (citing *Am. Land Program, Inc. v. Bonaventura Uitgevers Maatschappij, N.V.*, 710 F.2d 1449, 1454 n.2 (10th Cir. 1983)).  A *prima facie* showing is made where the plaintiff has demonstrated facts that, if true, would support jurisdiction over the defendant.  *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998).  To defeat the plaintiff's *prima facie* case, a defendant "must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'"  *Id*. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the

Fourteenth Amendment." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004) (quoting *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999)).  In Colorado, the state's long arm statute "confers the maximum jurisdiction permissible consistent with the Due Process Clause." *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005) (referring to Colo. Rev. Stat. § 13-1-124). Thus, the Court need only address the constitutional question of whether the exercise of personal jurisdiction over the defendants comports with due process. *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (noting that the state jurisdictional analysis in Colorado "effectively collapses into the second, constitutional, analysis").

The Court will accept the well-pled factual allegations (namely, the plausible, nonconclusory, and nonspeculative facts) of the complaint as true to determine whether Plaintiffs have made a *prima facie* showing that personal jurisdiction exists. *Id.*  Any factual conflicts must be resolved in the plaintiff's favor. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

### III.  ANALYSIS

The LV Defendants argue that the Court lacks personal jurisdiction over any of them, and that all claims against all the LV Defendants should therefore be dismissed. (ECF No. 18 at 6.)

To determine whether personal jurisdiction is proper, a court first looks to find minimum contacts with the forum state such that a defendant "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*,

444 U.S. 286, 297 (1980).  The focus is on protecting a defendant's liberty interest in not being subject to "the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations."  *Burger King*, 471 U.S. at 472 (quotations and citation omitted).  "[T]he question of whether a non-resident defendant has the requisite minimum contacts with the forum state to establish *in personam* jurisdiction must be decided on the particular facts of each case."  *Benton*, 375 F.3d at 1076 (internal quotation marks omitted).

If minimum contacts are established, the court then determines whether exercise of personal jurisdiction would be reasonable.  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  The standard of reasonableness is measured by whether an exercise of jurisdiction would offend "traditional notions of fair play and substantial justice."  *Id.* at 320.  In deciding whether the exercise of jurisdiction is reasonable, courts consider: "(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies."  *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1249 (10th Cir. 2000) (citing *Burger King*, 471 U.S. at 477; *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 113 (1987)).  Where a lesser showing of minimum contacts is made, a greater showing must be made to establish that exercise of jurisdiction would be reasonable; alternatively, where the showing of minimum contacts is greater, the balance of the reasonableness factors need not weigh as heavily in favor of exercising

jurisdiction in order to satisfy Due Process.  *See Burger King*, 471 U.S. at 477; *OMI Holdings*, 149 F.3d at 1095.

In the instant case, the LV Defendants' Motion argues that this Court lacks personal jurisdiction over them, claiming that Plaintiff has alleged insufficient facts to establish the requisite minimum contacts and that, contrary to Plaintiff's claim, the LV Defendants did not affirmatively consent to a Colorado choice of venue.  (ECF No. 18 at 6-15.)  The Court will review each argument in turn.

## A.    Minimum Contacts

The minimum contacts analysis differs depending on whether it arises from general or specific jurisdiction.  *OMI Holdings*, 149 F.3d at 1090-91.  A court may assert specific jurisdiction where the cause of action "arises out of" the forum-related actions of a defendant that thereby "purposefully avails itself of the privilege of conducting activities within the forum state."  *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995) (quoting *Hanson v. Denckla,* 357 U.S. 235, 251-53 (1958)); *Burger King*, 471 U.S. at 474 ("where individuals purposefully derive benefit from their interstate activities, it may well be unfair to allow them to escape having to account in other states for consequences that arise proximately from such activities") (internal citations and quotation marks omitted).  In contrast, general jurisdiction "arises when a defendant maintains continuous and systematic contacts with the forum state even when the cause of action has no relation to those contacts."  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).

8

Here, Plaintiff argues that the Court has both specific and general jurisdiction over the LV Defendants.  (ECF No. 34 at 4.)

1.   Specific Jurisdiction

Plaintiff claims that it has made a *prima facie* showing of the LV Defendants' minimum contacts through their regular interactions with Defendant Silicon, a Colorado business.  (ECF No. 34 at 4-7.)  As Plaintiff has alleged them, these contacts are comprised of the LV Defendants' initial loan contract with Silicon[3], their management of that loan through regular written electronic and telephone communications and several in-person business trips to Colorado, and becoming a party to the Subscription Agreement with Silicon and Plaintiff.  (*Id.*)

Although it is undisputed that the LV Defendants were party to two contracts with a Colorado business, namely, the loan to Silicon, and the Subscription Agreement whose breach is alleged here, the existence of a contract with a forum resident alone is insufficient to establish minimum contacts.  *Burger King*, 471 U.S. at 479 ("a 'contract' is 'ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.'") (quoting *Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 316-17 (1943)).  As the Supreme Court has instructed, the existence of a contract indicates

---

[3]  To permit the exercise of specific jurisdiction, the cause of action must "result[] from alleged injuries that arise out of or relate to" a defendant's forum-related contacts.  *Burger King*, 471 U.S. at 472 (internal quotation marks omitted).  Plaintiff here claims that its causes of action arise not only out of the Subscription Agreement whose breach is alleged, but also out of the LV Defendants' prior investment activity in Silicon, which allegedly led to the breach.  (ECF No. 34 at 7.)  Without deciding as a matter of law whether the nexus between Plaintiff's claims and the LV Defendants' investment in Silicon is sufficiently close, the Court will take Plaintiff's allegations on this point as true for the purposes of evaluating this Motion.

other dealings—"prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Id.* Thus, these negotiations and activities surrounding the contracts must constitute minimum contacts with the forum state in order for the Court to exercise specific jurisdiction.

In the case of the Subscription Agreement, the LV Defendants attest that the contract was negotiated and executed not in Colorado, but rather via a few telephone and e-mail communications, and that there were no future obligations on the part of the LV Defendants that would occur in Colorado. (ECF No. 18 at 10.) The text of the Subscription Agreement affirms that the LV Defendants had no obligations arising out of the contract that would occur in Colorado; in fact, the LV Defendants' only appearances in the text of the Subscription Agreement are in clarifying that Plaintiff's first right of negotiation is "subject to" the LV Defendants' rights as senior secured creditors, and in agreeing not to "unreasonably withhold consent or approval" for that transaction. (Subscription Agreement ¶¶ 8.1-8.4.) Plaintiff adds that the negotiations for the Subscription Agreement took place over several months, but does not dispute that they did not occur in Colorado, or that the contract was not executed in Colorado. (ECF No. 34 at 5.) Instead, Plaintiff argues that the LV Defendants' regular communications regarding the investment in Silicon suffice for minimum contacts. (ECF No. 85 at 4-7.) These contacts with Colorado related to the Subscription Agreement alone are too insubstantial to support the exercise of specific jurisdiction.

Regarding the investment contract between the LV Defendants and Silicon, Plaintiff alleges that the LV Defendants received regular monthly payments from Silicon, communicated with Silicon and monitored its business via telephone and e-mail, and sent representatives to visit Colorado in connection with the investment in Silicon. (ECF No. 34 at 5-6.) The LV Defendants do not dispute these contacts, but state that their representatives only visited Colorado on three occasions from 2006 to 2009, and that these contacts are insufficient to permit the exercise of specific jurisdiction. (ECF No. 36 at 8-9; Affidavit of Patrick Regan (ECF No. 18-1) ¶ 31.)

These contacts with Colorado are still quite limited in the context of those that generally suffice for specific jurisdiction in precedential cases. *See, e.g.*, *Burger King*, 471 U.S. at 480 (exercising specific jurisdiction where a franchisee who had attended only a few management courses and purchased equipment from Florida was nevertheless found to have "entered into a carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida . . . [including] voluntary acceptance of the long-term and exacting regulation of his business from Burger King's Miami headquarters"); *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220 (1957) (exercising specific jurisdiction where an insurance company's active, purposeful solicitation of business in the forum state and sale of its services there constituted a "substantial connection" with the forum state); *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1059-60 (10th Cir. 2008) (exercising specific jurisdiction where a defendant sought out and "pursued a continuing business relationship" with the forum-resident plaintiff, which was established through phone calls, letters, faxes, e-mails, "a continuous course of dealing" involving regular purchase

11

orders and payments over a period of seven years);  *Rainbow Travel Serv., Inc. v.*

*Hilton Hotels Corp.*, 896 F.2d 1233, 1238 (10th Cir. 1990) (exercising specific

jurisdiction due to a defendant's "solicitation of business in Oklahoma, negotiations

carried out with the plaintiff in Oklahoma, and sending contracts to Oklahoma for

execution" along with its "clear . . . expect[ation for] the contract to be partially

performed in Oklahoma" by expecting payment in Oklahoma).  The forum contacts in

the instant case—which arises out of one contract involving a few months of e-mail and

phone negotiations with one Colorado and one California corporation, and one loan

contract that involved periodic telephone and e-mail communication and three related

visits to Colorado over the course of three years—pale in comparison to those that

include regular visits, solicitation of business, and much longer courses of dealing.

However, it is also relevant to consider that modern technology permits a

business relationship to occur via e-mail and other remote communication that might

previously have required frequent or regular travel to a forum in person.  *See Burger*

*King*, 471 U.S. at 476 (holding that personal jurisdiction should not be defeated solely

due to the lack of personal presence in the forum, as "it is an inescapable fact of

modern commercial life that a substantial amount of business is transacted solely by

mail and wire communication across state lines, thus obviating the need for physical

presence within the State in which business is conducted").  This technological

evolution was apparent in 1985 to the *Burger King* Court, and is undoubtedly even

more applicable in the twenty-first century.  Thus, although the contacts in this case are

more limited than what the case law generally dictates, the Court cannot find with

certainty that the LV Defendants' regular e-mail and telephone contacts in negotiating

12

two contracts and monitoring a Colorado business, along with a handful of personal visits, are necessarily insufficient to constitute minimum contacts.

However, even assuming Plaintiff's allegations of the LV Defendants' contacts with Colorado do suffice to establish minimum contacts, the exercise of jurisdiction must still be reasonable in order to accord with Due Process. *Int'l Shoe Co. v. Washington*, 326 U.S. at 316.  Thus, the Court must consider whether the LV Defendants "should [have] reasonably anticipate[d] being haled into court" in Colorado, *World-Wide Volkswagen*, 444 U.S. at 297, and must weigh several factors, including the burden on the defendant, the plaintiff's interest, and the interests of the forum state and the interstate judicial system in judicial efficiency and advancing substantive social policy.  *Intercon*, 205 F.3d at 1249.

In applying the "reasonableness" factors, the Court finds that Plaintiff's allegations fail to support a finding that the LV Defendants should have anticipated being haled into court in Colorado.  The Court recognizes that Colorado, as the forum state, has an interest in resolving a dispute governed by its laws, which would include the instant dispute, given the Subscription Agreement's Colorado governing law provision.  *See Asahi Metal,* 480 U.S. at 115; (Subscription Agreement ¶ 10).  However, none of the other factors weigh in favor of finding jurisdiction reasonable.  The LV Defendants do business primarily in New York, and manage their interstate dealings remotely; thus, they have an interest in not bearing the burden of litigating in Colorado.  (*See* ECF No. 18 at 10-15.)  Further, one of the LV Defendants, Laurus Master Fund, is a foreign corporation located in the Cayman Islands, which heightens the importance of

the defendant's burden such that "great care and reserve should be exercised" before personal jurisdiction is exercised over a defendant from another country. *Asahi Metal*, 480 U.S. at 114.  As Plaintiff is a California corporation, Plaintiff's interest in the convenience and effectiveness of litigating in Colorado is not particularly apparent; Plaintiff's argument on this point only reiterates that Colorado provides the governing law.  (ECF No. 34 at 11.)  Additionally, where "the plaintiff is not a [forum state] resident, [the forum state]'s legitimate interests in the dispute have considerably diminished." *Asahi Metal*, 480 U.S. at 114.

Regarding the interests of the several states and the judicial system in general, apart from the Colorado governing law, it is not otherwise apparent that judicial efficiency favors Colorado or that piecemeal litigation would be the result if Plaintiff were to file in another forum, and there is no indication that any state's interest "in advancing fundamental substantive social policies" is at stake.  *See OMI Holdings*, 149 F.3d at 1097.  Additionally, despite Plaintiff's statement that "the relevant witnesses are located in Colorado" (ECF No. 34 at 12), Plaintiff has not indicated the identity or role of those witnesses, and the Court's review of the affidavits filed thus far indicates that with the exception of Silicon's CEO, the majority of the individuals whose testimony supports the parties' arguments are located in California or New York.  (*See, e.g.*, ECF Nos. 18-1, 29, 30, 31, 61-1.)  Further, as the LV Defendants have argued, their interstate investment contracts with Silicon and other entities all included a provision granting New York exclusive jurisdiction over any related disputes, making it less reasonable for them to anticipate being haled into court in Colorado based upon dealings related to those investment contracts.  (ECF No. 18 at 13-14.)

Finally, and as discussed more fully *supra,* because Plaintiff's showing of minimum contacts was marginal at best, Plaintiff must meet a higher bar in showing that the exercise of jurisdiction is reasonable.  *See OMI Holdings*, 149 F.3d at 1095.  It is apparent, given the LV Defendants' limited forum-related contacts and the relative weakness of the reasonableness factors here, that this Court's exercise of specific jurisdiction would not accord with "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 320.

Accordingly, the Court finds that Plaintiff has failed to meet its burden of showing that the exercise of specific jurisdiction over the LV Defendants in Colorado would comport with traditional notions of fair play and substantial justice.

2.    General Jurisdiction

Even where, as here, the forum-related contacts out of which a case arises are insufficient to meet the specific jurisdiction standard, the Court may still exercise personal jurisdiction where "a defendant maintains continuous and systematic contacts with the forum state."  *Helicopteros Nacionales*, 466 U.S. at 416.

Plaintiff alleges that in addition to the LV Defendants' contacts with Colorado through the Subscription Agreement and their loan to Silicon, the LV Defendants also entered into a consulting agreement with Silicon's CEO and made three other loans to Colorado corporations that involved additional communications with and visits to these Colorado entities.  (ECF No. 34 at 8-10.)  The LV Defendants admit that they made loans to four Colorado corporations, which comprised less than 1.5 percent of their transactions, and filed UCC Filing Statements in Colorado in conjunction with those loans, but maintain that such contacts are insufficient to establish the continuous,

15

systematic course of dealing required to exercise general jurisdiction.  (ECF No. 36 at 7-9.)

General jurisdiction generally requires such regular contacts with the forum state as to "approximate physical presence" there.  *Shrader v. Biddinger*, 633 F.3d 1235, 1243 (10th Cir. 2011).   Consistent business dealings have been held to invoke general jurisdiction; "[t]he case law sets the bar quite high, however, denying general jurisdiction absent substantial sales [in the forum]."  *Id.*  "Simply because a defendant has a contractual relationship and business dealings with a person or entity in the forum state does not subject him to general jurisdiction there."  *Id.* at 1246-47 (citing *Helicopteros Nacionales*, 466 U.S. at 416 (finding insufficient contacts for general jurisdiction even where the defendant purchased 80 percent of its equipment and regular training services from a forum-based corporation, defendant's personnel went to training sessions in the forum multiple times, and defendant's CEO visited the forum to negotiate a contract); *Benton v. Cameco Corp.*, 375 F.3d 1070, 1080-81 (10th Cir. 2004) (24 sales transactions over 8 years not sufficient for general jurisdiction)).

As with Plaintiff's specific jurisdiction argument, the forum contacts alleged in the instant case are insubstantial compared to those in the controlling case law.  In *Helicopteros Nacionales*, the Supreme Court evaluated personal visits not of a defendant's individual representatives a handful of times, as here, but of groups of personnel sent regularly to attend training sessions, and not five investments comprising 1.5 percent of the defendant's business, but regular purchases of 80 percent of the defendant's equipment—and the *Helicopteros* Court still found

16

insufficient contacts for general jurisdiction.  *Helicopteros Nacionales*, 466 U.S. at 416.

In light of such authority, the Court cannot find that the LV Defendants' contacts with

Colorado rise to the level required to subject them to general jurisdiction.

Accordingly, Plaintiff has failed to establish that the Due Process Clause permits

the LV Defendants to be haled involuntarily before this Court.

**B.      Choice of Venue**

Even without the requisite minimum contacts, Plaintiff's SAC alleges that the

Court has personal jurisdiction over the LV Defendants because they consented to the

jurisdiction of the District of Colorado by signing the Subscription Agreement.  (SAC ¶

18; ECF No. 34 at 1-3.)  Although the Subscription Agreement itself contains no choice

of venue provision, Plaintiff argues that the Subscription Agreement incorporated by

reference a "Form of Warrant" previously used by the parties, which contains a

Colorado choice of venue provision.  (ECF No. 34 at 2-3; ECF No. 1 at 25-33.)  The LV

Defendants do not dispute that the Form of Warrant that was allegedly incorporated

into the Subscription Agreement contains a Colorado governing law and choice of

venue provision; rather, they dispute that the Form of Warrant was incorporated by

reference into the Subscription Agreement.  (ECF No. 18 at 6-8.)

The Supreme Court has established that "parties to a contract may agree in

advance to submit to the jurisdiction of a given court" through a contractual forum

selection provision.  *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964);

*U.S. for Use of B & D Mech. Contractors, Inc. v. St. Paul Mercury Ins. Co.*, 70 F.3d

1115, 1117 (10th Cir. 1995) (finding the issue "well settled").  Therefore, the question

17

before the Court is whether the Form of Warrant was incorporated into the Subscription Agreement.

As the Subscription Agreement contains a Colorado governing law provision, the Court must apply Colorado law in interpreting it.  (Subscription Agreement ¶ 10.)  Under Colorado law, a court interpreting a contract must examine its terms in an attempt to ascertain the parties' mutual intent, while ensuring that the contract is construed "consistently with the well-established principles of interpretation."  *Level 3 Commc'ns, LLC v. Liebert Corp.*, 535 F.3d 1146, 1154 (10th Cir. 2008).  Courts must examine the contract as a whole and attempt to determine the parties' intent by reference to all of the contract's terms and provisions without viewing clauses or phrases in isolation.  *Id.*; *East Ridge of Fort Collins, LLC v. Larimer & Weld Irrigation Co.*, 109 P.3d 969, 973 (Colo. 2005).  The Court must avoid any contractual interpretation that would be inconsistent with the purpose of the contract or would lead to an absurd result.  *Atmel Corp. v. Vitesse Semiconductor Corp.*, 30 P.3d 789, 793 (Colo. App. 2001).

"Pursuant to general contract law, for an incorporation by reference to be effective, 'it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms.'"  *Taubman Cherry Creek Shopping Ctr., LLC v. Neiman-Marcus Grp., Inc.*, 251 P.3d 1091, 1095 (Colo. App. 2010) (quoting 11 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 30.25, at 234 (4th ed. 1999)).  "So long as it is clear what document is being referred to and that the parties intended for it to be a part of the [agreement], . . . it is as effectively a part thereof as if recited therein."  *In re Seymour's Marriage*, 536 P.2d 1172, 1175 (Colo. App. 1975).

When the text of the contract "unambiguously resolves the parties' dispute, the interpreting court's task is over," because "in the absence of an ambiguity a written contract cannot be varied by extrinsic evidence." *Level 3 Commc'ns*, 535 F.3d at 1154. On the other hand, when a contract has been determined to be ambiguous, "the meaning of its terms is generally an issue of fact to be determined in the same manner as other factual issues." *East Ridge*, 109 P.3d at 974. A contract is ambiguous if it is "fairly susceptible" to more than one interpretation. *Level 3 Commc'ns*, 535 F.3d at 1154; *see also East Ridge*, 109 P.3d at 974-75. Whether a contract is ambiguous is a question of law. *Level 3 Commc'ns*, 535 F.3d at 1155.

Here, Plaintiff included the Form of Warrant in its original Complaint as an attachment to the Subscription Agreement at "Exhibit A." (ECF No. 1 at 25-33.) The LV Defendants admit that the Subscription Agreement did contain a final page, blank but for the title "Exhibit A Form of Warrant," but argue that no Form of Warrant was actually attached to the Subscription Agreement, and the text of the Subscription Agreement makes no reference to "Exhibit A." (ECF No. 18 at 7; Affidavit of Patrick Regan (ECF No. 18-1) ¶ 9.)

Not disputing these facts, Plaintiff argues that the Subscription Agreement nevertheless incorporates the Form of Warrant because the Subscription Agreement makes reference to Silicon's obligation to deliver a warrant to Plaintiff upon Silicon's receipt of a certain amount of inventory from Plaintiff, and states that this transaction is to occur under "terms and conditions consistent with past practices as between [Plaintiff] and [Silicon]." (Subscription Agreement ¶ 3.) Plaintiff further states that during negotiations for the Subscription Agreement, the parties agreed to use the same

19

Form of Warrant as in a previous transaction between Plaintiff and Silicon, and alleges

that a representative of the LV Defendants was a party to the e-mailed discussions and

negotiations that included the Form of Warrant.  (ECF No. 34 at 3; Affidavit of Anil

Kripalani (ECF No. 29) ¶ 10.)

Upon examination of the text of the Subscription Agreement, the Court finds that

it unambiguously fails to incorporate the Form of Warrant.  The Court is unpersuaded

by Plaintiff's argument that the Subscription Agreement's reference to the "terms and

conditions consistent with past practices" between the parties incorporates the Form of

Warrant and its choice of venue provision.  (*See* Subscription Agreement ¶ 3.a.)  While

the contractual text refers generally to past dealings between Plaintiff and Silicon, there

is no specific reference to or incorporation of any particular Form of Warrant, nor is

there reference to any specific provisions therein.  *See U.S. for Use of DDC Interiors,*

*Inc. v. Dawson Const. Co., Inc.*, 895 F. Supp. 270, 273 (D. Colo. 1995) (aff'd, 82 F.3d

427 (10th Cir. 1996)) (where the disputes clause at issue was "not specifically

referenced anywhere in the subcontract[,] . . . the incorporation by reference of the

prime contract's disputes clause [was] general rather then specific" and therefore was

insufficient to incorporate the specific terms of the disputes clause).

Similarly, the Subscription Agreement contains a discussion of the warrants

Silicon is to provide to Plaintiff, specifying the number of shares, the exercise price, and

the time to exercise the warrant, but fails to make reference to a "Form of Warrant,"

discuss any particular Form of Warrant or its terms, or refer to any such document as

an attachment or exhibit.  (Subscription Agreement ¶ 3.b.)  Nor does the Court find the

"Exhibit A" title page sufficient to incorporate the Form of Warrant, as the text of the

20

Subscription Agreement contains no reference to, or definition of, "Exhibit A."  The Subscription Agreement unambiguously fails to specifically incorporate any such extraneous document, as it makes no reference to any exhibit, attachment, or Form of Warrant, and thus is not "fairly susceptible" to more than one interpretation.  *Level 3 Commc'ns*, 535 F.3d at 1154.  Because the text of the Subscription Agreement unambiguously does not incorporate Plaintiff's Form of Warrant, the Court may not consider the extrinsic evidence Plaintiff provides regarding the parties' discussions during contract negotiations, as "in the absence of an ambiguity a written contract cannot be varied by extrinsic evidence."  *Level 3 Commc'ns*, 535 F.3d at 1154.

Furthermore, as the Court has repeatedly noted, the Subscription Agreement contains its own "Governing Law" provision.  (Subscription Agreement ¶ 10.)  If the Subscription Agreement were read to fully incorporate the Form of Warrant and its "Governing Law; Venue" provision, such an interpretation would require a finding that the parties intended to rely upon the Form of Warrant to provide the Subscription Agreement's choice of venue, but chose not to rely on the same provision to elect Colorado law as governing law, instead including a duplicative Colorado governing law provision.  This is precisely the type of absurd result that Colorado law requires the Court to avoid when interpreting contracts.  *See Atmel Corp.*, 30 P.3d at 793.

Accordingly, the Court finds that the LV Defendants did not consent to this Court's jurisdiction by a contractual forum choice provision.

## C.    Remaining Arguments

Because Plaintiff has failed to demonstrate that the Court may exercise

jurisdiction over the LV Defendants, either by showing the requisite minimum contacts, or by demonstrating that they consented to jurisdiction, the Court must dismiss Plaintiff's claims against them.  Plaintiff's SAC included alter ego and agency arguments for jurisdiction; however, because those theories operate only to extend jurisdiction over additional defendants once personal jurisdiction is proper over one of them, these arguments are moot and the Court need not discuss them.

Additionally, in filing their Counterclaims, the LV Defendants as Counterclaimants expressly reserved their rights and positions taken in the instant Motion, refusing to waive their position that the Court lacks personal jurisdiction over them despite filing claims before this Court.  (ECF No. 135 at 2 n.1.)  The Court interprets the Counterclaimants' reservation of rights as an assertion that they do not agree to submit to this Court's jurisdiction.  Therefore, in accordance with the Court's finding that it lacks jurisdiction over the LV Defendants, the Court also dismisses the Counterclaims without prejudice to refiling in a forum in which the Counterclaimants submit to jurisdiction.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.    The LV Defendants' Motion to Dismiss (ECF No. 129) is GRANTED;

2.    Plaintiff's claims against Defendants LV Administrative Services, Inc., Laurus Master Fund, Ltd., Laurus Capital Management, LLC, Valens Capital Management, LLC, Valens Investment Advisers, L.P., are DISMISSED WITHOUT PREJUDICE;

3.    Counterclaimants' First Amended Counterclaims (ECF No. 135) are DISMISSED
       WITHOUT PREJUDICE, as they have not submitted to this Court's jurisdiction;

4.    Counter-Defendants' Renewed Motion to Dismiss the Counterclaims (ECF No.
       143) is DENIED AS MOOT, and the remainder of the briefing schedule on that
       motion as set forth in the Court's Order (ECF No. 144) is hereby VACATED; and

5.    The Clerk and parties shall update the case caption in accordance with this
       Order.  This action remains pending as to Plaintiff's claims against Defendants
       Silicon Mountain Holdings, Inc., Silicon Mountain Memory, and Waytech, LLC.

Dated this 30th day of April, 2013.

                                                    BY THE COURT:


                                                    _____
                                                    William J. Martínez
                                                    United States District Judge

23